## ST. LOUIS-S. F. RY. CO. et al. v. SIMMONS.

No. 15571—Opinion Filed March 9, 1926.

Rehearing Denied Nov. 16, 1926.

Negligence—Personal Injuries—Issues Confined to Specific Acts of Negligence Alleged.

In an action for damages for personal injuries, where the petition contains general allegations followed by an enumeration and averment of specific acts of negligence as "directly contributing to cause the injury," the plaintiff is confined to the acts of negligence specifically alleged.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Marshall County; Porter Newman, Judge.

Action by F. L. Simmons against St. Louis-San Francisco Railway Company and W. A. Yoakum. Judgment for plaintiff, and defendants appeal. Reversed.

E. T. Miller, Stuart, Sharp & Cruce, and Ben Franklin, for plaintiffs in error.

Suits & Hall and Mathers & Coakley, for defendant in error.

See, also, 16 Okla. 126, 242 Pac. 151, 245 Pac. 894.

Opinion by RAY, C. Plaintiff, F. L. Simmons, recovered judgment in the sum of $2,000 against the railway company and its engineer in charge of its engine, for personal injuries suffered when the wagon in which he was riding was struck by the company's engine and train at a public crossing of the railway company's track. The judgment must be reversed for error of the court in submitting to the jury an issue not presented by the pleadings, which, we think, was prejudicial to the substantial rights of the defendants.

The question erroneously submitted to the jury, as a separate cause for recovery, was the condition of the crossing as an act of negligence on the part of the defendants. As to the condition of the crossing it is alleged in plaintiff's petition:

"* * * That said railway crossing over said highway had been allowed by said railway company to become rough and uneven, worn and dilapidated; that the crossing boards on each side of the steel rails of said railway track where same passes over said highway had rotted and worn away; that the said rails of said track projected about four inches above the level of the crossing; that the bed of the said railway track between the rails at the point where the same crosses said highway was worn and uneven and full of holes; that on the right of way and property of said railway company the approach to said crossing on the east side of said railway track had been allowed by said railway company to become and was on the said 9th day of November, 1922, full of holes, ruts, and worn and uneven places; that said railway company had theretofore constructed upon its said railway track a drain box, or culvert; that one of the top planks of said drain box, or culvert, had rotted and

worn away, leaving a hole in the top of said culvert, or drain box, and across said highway, about six inches in width.

"* * * That about a quarter or three-eighths of a mile north of said railway crossing said railway track at that time made and still makes an abrupt turn or curve to the east; that trees, full of foliage at said time, were growing along said right of way and to the east thereof from the point of said railway crossing to and beyond the said curve, and that on the 9th day of November, 1922, a train approaching said crossing from the north could not be seen by a person at said crossing for more than a distance of one-quarter or three-eighths of a mile to the north of said crossing.

"* * * That said W. A. Yoakum was and had been for many months prior to said date making regular runs as a locomotive engineer in the employ of the said St. Louis-San Francisco Railway Company, and was at said time and had been for at least a year prior to said date as such employe of said railway company regularly, that is, every two or three days, driving and operating the said railway company's locomotive engines and trains over and across said highway crossings; that said defendan's and each of them knew the nearness of said curve to the said crossing, knew that a person at said crossing could not see an engine or train approaching from the north for a distance of more than one-fourth or three-eighths of a mile, knew that said crossing was rough, uneven, worn and dilapidated, as set forth herein, knew that on account of said condition of the said crossing and the approach thereto as said highway passed over said railway company's right of way a person crossing over said railway crossing in a vehicle could not cross said railway track as rapidly as on a crossing in reasonable or ordinary state of repair, and knew that such person would be hindered and delayed on account of said worn, rough, uneven and dilapidated condition of said railway crossing and the approach thereto, and knew that said crossing was a public crossing in a public highway and that the same was constantly and continuously used by travelers along said highway."

It was then alleged that the rate of speed and the starting and stopping of the engine and the train were under control of the defendant Yoakum, as the engineer in the employ of the defendant company; that it was the duty of the defendants to operate the engine and train in approaching the crossing at a reasonable rate of speed with due regard to the lives and safety of persons who might be traveling over the crossing, and at such rate of speed as would enable persons at the crossing, and especially this plaintiff, to observe the engine and train a sufficient length of time after it came in sight

from around the curve to safely get away from the track and crossing; that it was their duty to run the engine and train from around the curve to a point of view of the crossing at such a rate of speed as would enable defendants to stop the engine and train before reaching the crossing if reasonably necessary for the safety of persons, and especially the plaintiff, who might be at the crossing; that it was their duty to sound the whistle and ring the bell, and to do so in such manner as to give persons at the crossing, and especially the plaintiff, reasonable warning of the approach of the train, and to give such other warnings as were reasonably necessary under the facts alleged in the petition to give warnings of the approach of the train. It was then alleged that when the plaintiff approached the track he stopped, looked, and listened, and neither saw nor heard the oncoming train; that he then approached the crossing, and as the horses had started to cross the track drawing the wagon in which plaintiff was riding, and after reaching a point where it was impossible to withdraw from the track, the engine came in sight around the curve of the track; that after he saw the train about one-fourth or three-eighths of a mile distant, approaching at the rate of 80 or 85 miles an hour, he made all the speed possible to get off the track, but, owing to the rough and uneven condition of the crossing, he was unable to get his wagon clear of the track before it was struck and destroyed by the oncoming train, which resulted in personal injuries to the plaintiff. It was then alleged that the defendant carelessly and negligently drove and operated the engine and train at such a rapid and terrific rate of speed that plaintiff had no opportunity, time, or chance to leave and get away from the crossing, which negligence upon the part of the defendants directly contributed to cause the injuries; that the defendants carelessly and negligently operated the train around the curve at such rate of speed that the train could not be stopped after coming in view of the crossing, which negligence directly contributed to cause the injuries; that the defendant failed to sound the whistle or ring the bell or give any alarm or notice to the plaintiff, of the approach of the train, which negligence upon the part of the defendants directly contributed to cause the injuries. It was not alleged in the petition, upon which issues were joined, that the condition of the crossing was an act of negligence upon the part of the defendants which directly contributed to cause the injuries.

On this state of pleadings the court, in its statement of the issues to the jury, said:

"* * * The following acts of negligence are alleged as the cause of the injury: * * *

"(3) That the track where the road crossed over same was out of repair and defective, and caused delay in crossing the same."

And in instruction No. 4 said:

"You are further instructed that if you find and believe from a fair preponderance of the evidence that the plaintiff was injured at the time and place mentioned in his petition and while he was crossing the railroad track of the defendant company, and you further find that the highway crossing over said railroad bed and track of the defendant company was negligent in permitting it to be and remain in that condition, and that said condition of the crossing prevented the plaintiff and his wagon and team from getting over and off said track in time to avoid being struck by said train, after hearing or seeing the train approach said crossing, and that the condition of the track and crossing where said highway crossed said railroad was the direct and proximate cause of the injuries, if any, to the plaintiff, and you further find that the plaintiff was not guilty of any act which contributed to his injury, then the plaintiff would be entitled to recover herein."

We think the rule recognized by the authorities generally, and by this court, is that when a general allegation of negligence is followed by an enumeration and averment of specific acts of negligence, plaintiff is confined to the acts of negligence specifically alleged. 21 R. C. L. 501; McManamee v. Missouri Pac. Ry. Co. (Mo.) 37 S. W. 119; Haley v. Missouri Pac. Ry. Co. (Mo.) 93 S. W. 1120; C., R. I. & P. Ry Co. v. Wheeler, 70 Kan. 755, 79 Pac. 673.

In the case of C., R. I. & P. Ry Co. v. McIntire, 29 Okla. 797, 119 Pac. 1008, this court quoted with approval from the Kansas case just cited:

"A petition containing general averments of negligence 'as hereinbefore complained of, consisted in this,' presents only such issues as are found in the specific allegations."

The case of St. Louis & San Francisco Ry. Co. v. Simmons, No. 15570, 116 Okla. 126, 242 Pac. 151, is not controlling. In that case the plaintiff recovered for the death of the son who was killed in the same accident complained of in this case. The allegations in the plaintiff's petition as to the condition of the crossing, and as to the acts of negligence directly contributing to the injury, are identical with the allegations in this case, but in that case no objections were made to the evidence offered by the plaintiff as to the condition of the crossing. In that case it was said:

"It is contended that in the absence of any charge in the original petition of specific acts of negligence on the part of the defendant railway company, in failing to maintain its crossing in good repair and in failing to remove obstructions from its right of way tending to obstruct the view from such crossing, that the trial court erred in submitting such issue to the jury over the defendant railway company's objection. Whether these acts of negligence were, as a matter of fact, charged in the original petition is a matter which, in the light of the record before us, it is not necessary for us to determine. Evidence of such defective condition was received at the trial without objection on the part of the defendant railway company, and evidence offered by it in contradiction thereof. In this state of record, objections to the submission, by the court, of the defective condition of the crossing and of the right of way, to the jury, were properly overruled, and if there was any evidence reasonably tending to show negligence on the part of the defendant railway company, in respect of the manner in which it maintained said crossing and of its right of way in the vicinity thereof, a finding and verdict by the jury against the defendant railway company on these issues must be sustained on appeal."

In the instant case it was conceded by the defendants that evidence as to the condition of the crossing was competent as inducement, and to aid the jury in determining whether the train was being run at an excessive rate of speed, but objection was made to such evidence as proof of negligence independent of the rate of speed of the train. This objection was overruled and exception reserved. The defendant also excepted to the instruction of the court in submitting the condition of the crossing as an act of negligence for which plaintiff could recover.

It is argued by plaintiff that the statutes of this state require the railroad company to keep the public crossing of the track in good condition, and that its failure so to do is a violation of the statute, and, for that reason, it was not necessary to specifically allege negligence upon the part of the company in failing to keep the crossing in good condition as a ground for recovery. With this contention we cannot agree. The office of the petition is to advise the defendant of the grounds upon which recovery is sought, and when specific acts of negligence were alleged as directly contributing to the injury, and the condition of the crossing was not alleged as a specific act of negligence contributing to the injury, or as the proximate cause, we think the defendants were not advised that a recovery would be sought upon that ground. This is made more apparent when it is considered that the engineer in charge of the train was joined with the non-

resident corporation as a defendant. Obviously, the purpose of making the engineer party defendant was to prevent a removal to the federal court, as the plaintiff was entitled to do. By making the engineer a party defendant the case was not a removable one unless the petition disclosed a separable controversy. If the condition of the crossing had been alleged as an act of negligence directly contributing to the injury, and for which recovery was sought, it would have stated a separable controversy, for the reason that the engineer could in no event be held responsible for the condition of the crossing. The only actionable negligence alleged against the engineer was failure to sound a proper and timely warning and the excessive and dangerous rate of speed of the train.

While the plaintiff has the conceded right to join the engineer as party defendant with the nonresident defendant, and so plead his cause as to prevent a removal to the federal court, as said in Durst v. Southern Railway Co. (S. C.) 125 S. E. 651:

"At the same time his enjoyment of this conceded privilege must be taken with its concomitant disadvantage."

The judgment is reversed for new trial.

By the Court: It is so ordered.